**George C. VOGELSANG, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendants.**

**No. 98–2309–CIV.**

United States District Court,
S.D. Florida.

March 10, 1999.

**1320**

George C. Vogelsang, Coral Gables, FL, Ronald Kammer, Miami, FL.

## ORDER

GOLD, District Judge.

This is an action for declaratory relief brought by a lawyer seeking a declaration by the court that the insurance company has a duty to defend and indemnify him. The material facts of the case are undisputed and the case is now before the court on the parties' cross motions for summary judgment. At issue is whether the Professional Services Exclusion in the business insurance policy relieves the insurer of the duty to defend and indemnify the insured for a tort action filed against the lawyer by a non-client based on actions arising from the lawyer's representation on the non-client's former wife. For the following reasons, the court finds that the Professional Services Exclusion in the business insurance policy relieves the insurer of the duty to defend or indemnify the insured.

## THE FACTS

Plaintiff, George C. Vogelsang, is an attorney licensed to practice in the state of Florida. To cover potential liability arising from that practice, Vogelsang secured a Business Insurance Policy from Allstate Insurance Company. Excluded from coverage under that policy were personal injuries arising out of the rendering of, or failure to render, professional services.

During the policy period, Stewart D. Williams filed a lawsuit against Vogelsang and his law firm alleging claims for malicious prosecution, slander, defamation, and intentional infliction of emotional distress arising out of Vogelsang's representation of Williams's former wife in a dissolution of marriage proceeding against Williams. Williams's complaint alleges that on behalf of Mrs. Williams, Vogelsang drafted a complaint which contained allegations of fraud against Williams based on facts that Vogelsang knew were false and without merit. Count III for defamation was grounded on a conversation that Vogelsang allegedly had with an assistant for another lawyer in which Vogelsang called Williams a "crook." Vogelsang looked to Allstate to defend and indemnify him pursuant to the Business Insurance Policy.

Allstate contends that it has no duty to provide a defense or to indemnify Vogelsang because the allegations of Williams's complaint do not allege a covered liability because they fall squarely within the Professional Services Exclusion. In opposition, Vogelsang argues that the policy clearly provides coverage for personal injuries such as the ones asserted by Williams and the Professional Services Exclusion does not apply because Williams was never his client. Where, as here, there are no material facts in dispute, the question of whether a certain factual situation falls within the coverage of an insurance policy is one of law that may be decided by the court. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983); *State Farm Fire & Cas. Co. v. Nickelson*, 677 So.2d 37 (Fla. 1st DCA 1996).

## POLICY TERMS

The following policy terms are those on which Vogelsang rests his coverage argument.

Liabilities Covered

> We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect.

\*    \*    \*    \*    \*    \*

Defense

We will defend any suit brought against persons insured seeking damages to which this Part applies, even if the allegations in the suit are groundless, false or fraudulent.

\*   \*   \*   \*   \*   \*

Exclusions—Liabilities We Do Not Cover

Any accidental event, personal injury, or advertising injury, arising out of the rendering of or the failure to render scientific or professional services, or consulting business or technical services. This exclusion does not apply to Incidental Medical Malpractice Liability.

\*   \*   \*   \*   \*   \*

Definitions

"Accidental event" means an accident, including continuous or repeated exposure to the same condition, resulting in bodily injury or property damage. An accident cannot be intended or expected by any persons injured, except for the use of reasonable force to protect persons or property.

"Personal Injury" means the following offenses committed in the course of your business.

1. The false arrest, detention or imprisonment of anyone.

2. Malicious prosecution.

3. Libel, Slander or the publication of any material damaging to anyone's reputation.

4. Any writing or statement that violates anyone's right to privacy.

5. Any wrongful entry on anyone's premises, wrongful eviction from those premises or other action that violates anyone's private occupancy.

Vogelsang's position is that since the policy covers personal injuries, by the terms of the contract, Allstate was under a duty to defend and indemnify him. Allstate asserts that the Professional Services Exclusion specifically excludes coverage for lawsuits based on acts arising from the insured's profession and that Vogelsang was sued specifically because he had prepared a complaint on behalf of his client, Mrs. Williams. Vogelsang contends that the acts complained of by Williams should not be considered a rendering of professional services because he never rendered a professional service to Mr. Williams.

### LEGAL DISCUSSION

The insured's duty to defend is governed by Florida law. In this case, however, the parties have failed to cite a Florida case addressing the specific issue presented to this court nor has this court found a controlling Florida case. Vogelsang argues that *Psychiatric Assoc. v. St. Paul Fire & Marine Ins. Co.*, 647 So.2d 134 (Fla. App.1st DCA 1994) supports his position, but for reasons discussed below, the court finds it distinguishable. Several courts in other jurisdictions have considered and rejected the argument that the professional services exclusion does not apply where the underlying complaint alleges liability and injuries to a non-client. *See e.g., Hurst–Rosche Engineers v. Commercial Union Ins. Co.*, 51 F.3d 1336 (7th Cir. 1995); *Harad v. Aetna Casualty and Surety Co.*, 839 F.2d 979 (3rd Cir.1988); *Carpenter, Weir & Myers*, 1998 WL 976309 (D.Kan.1998); *Pekin Ins. Co. v. L.J. Shaw & Co.*, 291 Ill.App.3d 888, 225 Ill.Dec. 862, 684 N.E.2d 853 (1997); *Erie Ins. Group v. Alliance Env't, Inc.*, 921 F.Supp. 537, 541 (S.D.Ind.1996); *Allstate Ins. Co. v. Sellers–Bok*, 942 F.Supp. 1428 (M.D.Ala.1996). Reasoning that nothing in the language of the professional services exclusion limits the exclusion to claims brought by clients of the professional, these courts have refused to impose a limitation on the term "professional service" that is not set forth in the policy itself. *See e.g., Erie Ins. Group*, 921 F.Supp. at 542 (the professional services exclusion applies to damages or liability arising from services of a professional nature and does not require privity between the insured and the claimant).

*Harad v. Aetna Casualty and Surety Co.*, involved facts very similar to the instant case. Harad, a lawyer, was sued for malicious prosecution by a non-client based on a verified answer drafted by the Harad which asserted that the non-client conspired and contrived to defraud Harad's client. *Id.* at 980. The company that issued Harad his business insurance policy refused to defend Harad, relying on the professional services liability exclusion in the policy. When Harad sought a declaratory judgment that Aetna was under a duty to defend, the trial court found that the professional services exclusion did not apply because Harad had not rendered "professional services" to the party suing him. The appellate court reversed. It analyzed the nature of the term "professional services" concluding that a "professional act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor skill involved is predominantly mental or intellectual, rather than physical or manual." *Id.* at 984. The *Harad* court advised that in determining whether a particular act is of a professional nature or a "professional service" a court must look not to the title or character of the party performing the act, but to the act itself. *Id.* It found that the acts which exposed Harad to liability were the drafting, signing, and filing a complaint on behalf of his client. Such acts are clearly professional in nature and go to the heart of the type of services an attorney provides to his clients. Since Harad's liability flowed directly from his performance of a professional activity, and as the policy excluded coverage for any liability arising from the "rendering ... of any professional service," the exclusion obviated any duty to defend and indemnify. *Id. See also Carpenter, Weir & Myers v. St. Paul Fire and Marine,* 1998 WL 976309 at *13 (D.Kan.1998) (conduct that falls within the professional aspect of the practice of law involves either the rendering of legal advice to clients or the advocacy on behalf of clients for which the attorney is held to a

certain minimum professional and ethical standard).

Another factor considered by the Third Circuit was an examination of the policy as a whole. A policy entitled "Business Owners Policy (Deluxe)," was obviously intended to cover liability arising from the operation of a business. The terms of the policy purported to cover business, but not professional liability. Rejecting Harad's argument that his business was the practice of law, the court held that the practice of law, as other similarly-regulated professional activities, has two very different and often overlooked components—the professional and the commercial.

> The professional aspect of a law practice obviously involves the rendering of legal advice to and advocacy on behalf of clients for which the attorney is held to a certain minimum professional and ethical standards. The commercial aspect involves the setting up and running of a business, i.e., securing office space, hiring staff, paying bills and collecting on accounts receivable, etc., in which capacity the attorney acting as businessperson is held to the same reasonable person standard as any other.

*Id.* at 985. Given the dual nature of the practice of law, an attorney's liability for an action should be assessed depending on the particular role he was performing at the time the alleged liability arose. As an example, the court stated that if an attorney, while hosting a real estate closing in his office, places his briefcase on the floor and a colleague trips on it, is injured and sues him, the lawyer's liability would derive not from the rendering of a professional service, but rather from his operation of a business. In contrast, Harad's conduct was not related to his operation of a business, but was derived solely from his providing legal services to a client. Thus Harad's conduct fell squarely within the meaning of the phrase "rendering ... [a] professional service" as set forth in the professional liability exclusion of the policy. *Id. See also Carpenter, Weir &*

*Myers,* 1998 WL 976309 at * 13 ("Commercial general liability (CGL) coverage and professional liability coverage 'serve significantly different functions within the insurance industry.' CLG offers comprehensive coverage to the insured and may even cover the provision of services in general, a professional liability policy 'is designed to insure members of a particular professional group from the practice of liability arising out of a special risk inherent in the practice of the profession.'") (citations omitted).

Similar reasoning was also applied by a district court judge in *Sellers–Bok,* 942 F.Supp. at 1434. That case involved insurance coverage for tort claims including malicious prosecution, libel, and intentional infliction of emotion distress brought against a psychiatrist by the father of a minor child. The psychiatrist had performed a psychiatric evaluation of the child and issued a report opining that the child's symptoms were consistent with sexual abuse by her father. Finding that the claims arose from the psychiatrist's rendering of professional services, the district court found that they were unambiguously excluded from coverage by the policy's Professional Services Exclusion. *Id.* at 1434.

Vogelsang argues that a Florida case, *Psychiatric Assoc. v. St. Paul Fire & Marine Ins. Co.,* 647 So.2d 134 (Fla. 1st DCA 1994), is contrary to *Sellers–Bok* and compels a different result. As in *Sellers–Bok,* a psychiatric professional association was sued by a non-client for personal injuries such as emotional anguish, humiliation, and injury to reputation. The appellate court held that there was coverage under the professional association's insurance policy because the personal injury claims alleged by the non-client were not excluded by the Professional Services Exclusion. But *Psychiatric Assoc.* is distinguishable from *Sellers–Bok* and the instant case. In *Psychiatric Assoc.,* the complaint in the underlying lawsuit was filed by a doctor who alleged that the professional associa-

tion had unjustifiably interfered with his relationship with the Gulf Coast Treatment Center, Inc., by attempting to block his staff privileges. Thus, unlike *Sellers–Bok,* the injuries did not flow from the professional association's practice of psychiatry. The doctor's allegations were directed at the commercial aspect of running a business, such as interference with a contract, rather than professional aspect of being a psychiatrist, such as providing mental health care. As stated previously, the purpose of a business insurance policy is to provide protection against potential liabilities incurred as a result of business operations, not to protect the insured from malpractice claims. The appellate court's finding of coverage under the facts of *Psychiatric Assoc.* was consistent with that purpose.

In this case, the complaint does not allege that Vogelsang committed a negligent or intentional act incidental to running the commercial aspect of his business. All of the allegations flow directly from Vogelsang's professional decisions while rendering legal services to Mrs. Williams. If the legal services had not been provided, no injury would have occurred.

## CONCLUSION

The claims brought by Williams are excluded from the policy's coverage because they fall within the Professional Services Exclusion. Accordingly, Vogelsang's Motion for Summary Judgment is denied; Allstate's Motion for Summary Judgment is granted. Allstate does not have a duty to defendant or indemnify Vogelsang on any of the claims.