SHEPHERD, J.,
concurring.
I write to clarify my view that the more appropriate disposition of this case is a dismissal of the petition. The point is more than just academic.
As Judge Chris Altenbernd has written with characteristic lucidity in Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646 (Fla. 2d DCA 1995):
The case law usually explains that a certiorari petition must pass a three-prong test before an appellate court can grant relief from an erroneous interlocutory order. A petition must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on post-judgment appeal. See Gulf Cities Gas Corp. v. Cihak, 201 So.2d 250 (Fla. 2d DCA 1967). While this traditional test is correct, the grammar of the test places the description of the appellate court’s standard of review on the merits before the two threshold tests used to determine jurisdiction.
Id. at 648. Thus, the first order of business for a court presented with a petition to review an interlocutory order by certio-rari is to determine whether the order will result in material injury for the remainder of the case that cannot be corrected on postjudgment appeal.[6] This inquiry determines whether the reviewing court has jurisdiction to consider the petition at all. If the answer to that question is “no,” the petition should be dismissed. Id. The court’s labor is at an end. If the answer is “yes,” then, and only then, the court may address the second and final question — is the order a “departure from the essential requirements of the law?”
At this juncture, three additional options open to the reviewing court are to: (1) deny the petition; (2) deny the petition on the merits; or (3) grant relief. See Topps v. State, 865 So.2d 1253 (Fla.2004).[7] The *110 first of these options is intended to encompass only “ ‘procedural bars’ ... meaning that the case, claim, or issue is precluded in some manner from being considered on the merits.” Id. at 1254. Examples of the proper use of this option include the denial of a petition on the ground it is moot, barred by the doctrines of res judicata or collateral estoppel, or a denial in the exercise of the court’s discretion. Id. at 1254-55, 1257. Although occasionally misused to signify a dismissal of the petition for lack of jurisdiction, see Parkway, 658 So.2d at 649 n. 3, the proper uses of this option are limited. Furthermore, any elaboration by a court on such a denial, beyond explaining why the petition is procedurally barred, is surplus and of no prec-edential value. State ex rel. Biscayne Kennel Club v. Bd. of Bus. Regulation, 276 So.2d 823, 826 (Fla.1973) (stating that where a statement of a district court of appeal is not essential to the decision of that court, or “obiter dictum,” it is without precedential value). In contrast, an order denying “on the merits” a petition for cer-tiorari or a grant of a petition is a decision on the merits and the appellate court’s holding is of precedential import. Topps, 865 So.2d at 1255.
Despite this well-established legal construct, the en banc court in the case before us reasons, in footnote five, “Because we have jurisdiction under Article V, Section 4(b)(3) of the Florida Constitution, we will instead “deny” the petition for failure to establish the prerequisites for a consideration of its merits.” See En Banc Op. at p. 8, note 5. This reasoning is incorrect.
Article V, section 4(b)(3) does not confer jurisdiction on this court or any other district court of appeal in a particular case. It is merely an express recognition of the supervisory power the higher courts of this state always have had over the courts inferior to them, even when the power was not expressly stated in the Florida constitution.[8] A casual reading of Article V, section 4(b)(3) confirms the point:
A district court of appeal or any judge thereof may issue writs of habeas corpus returnable before the court or any judge thereof or before any circuit judge within the territorial jurisdiction of the court. A district court of appeal may issue writs of mandamus, certiorari, prohibition, quo warranto, and other writs necessary to the complete exercise of its jurisdiction. To the extent necessary to dispose of all issues in a cause properly before it, a district court of appeal may exercise any of the appellate jurisdiction of the circuit courts.
Art. V, § 4(b)(3), Fla. Const, (emphasis added). Although the power has sometimes been modified or curtailed by law,[9] it *111 is a power that inheres in all American reviewing courts, whether state or federal, and whether or not expressly stated. See Haines, 658 So.2d at 525; George E. Harris, A Treatise on the Law of Certiorari §§ 1-6 (The Lawyers’ Co-Operative Publishing Co. 1893); S.A. de Smith, The Prerogative Writs, 11 Cambridge L. J. 40, 45-46 (1951). On the other hand, the law relating to the uses of the writ, whether common law or statutory, has come down to us through the centuries of upheaval and development of English and American jurisprudence. As previously discussed, that law in this State, as it relates to the petition before us, requires that we dismiss the petition.
The distinction made is not one without a difference. As William H. Rogers and Lewis R. Baxter, two students of the uses of the writ of certiorari, wrote sixty years ago:
The constitutional provisions, the statutes, and the court rules are instrinsi-eally plain enough; but the decisions are confusing. It is a striking aspect of the case law of certiorari, in Florida as elsewhere, that major portions of many opinions consist of dicta, wholly unnecessary to the decision. These dicta mislead the bar and afford the bench “authority” for later decisions of questionable soundness.
William H. Rogers & Lewis R. Baxter, Certiorari in Florida, 4 U. Fla. L. Rev. 477, 477 (1951) (footnote omitted). If we wish to have a rightful claim to require members of the Bar to be judicious and disciplined when deciding whether to petition this court for the extraordinary relief represented by an original writ, such as a petition for certiorari,[10] we must be equally vigilant in disciplining ourselves so as not to contribute to the confusion that so often surrounds its use.
That said, I agree with that portion of the en banc opinion in which the court recedes from its decisions in North Pointe Insurance Co. v. Tomas, 999 So.2d 728 (Fla. 3d DCA 2008), and XL Specialty Insurance Co. v. Skystream, Inc., 988 So.2d 96 (Fla. 3d DCA 2008). Unlike our sister courts, see Illinois Nat’l Ins. Co. v. Bolen, 53 So.3d 388, 389-90, (Fla. 5th DCA 2011); XL Specialty Ins. Co. v. Aircraft Holdings, LLC, 929 So.2d 578, 587 n. 7 (Fla. 1st DCA 2006), petition for cert. filed, No. SC 06-1303 (Fla. June 29, 2006), and dismissed No. SC06-1303 (Fla. Sept. 9, 2008); United Auto. Ins. Co. v. Tienna, 780 So.2d 1010, 1011 n. 4 (Fla. 4th DCA 2001); Mich. Millers Mut. Ins. Co. v. Bourke, 581 So.2d 1368, 1370 (Fla. 2d DCA 1991), which have reached the issue and concluded that a bad faith claim is premature and does not accrue until the underlying insurance contract action is concluded and “the ... carrier’s appeal has been finally determined,” see Bolen, 53 So.3d at 389-90, the message of this court today is that we will not exercise our jurisdiction to review orders granting leave to amend to add a bad faith claim, denying a motion to dismiss a bad faith claim, or prematurely lifting an order abating a bad faith claim on the ground the claim itself was brought prematurely, but rather will wait for a *112 proper case.[11]
I would dismiss the petition for certiora-ri in this case.
EMAS, J., concurs.

. My remarks in this concurrence are directed to a petition for certiorari taken from a non-final order before the entry of final judgment or decree. When certiorari is invoked to seek review of a final judgment or order from a lower tribunal, the appellate court’s jurisdiction and scope of review are somewhat different than when examining a non-final order. See Parkway, 658 So.2d at 648 n. 2 (citing Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995)).

. Prior to 1939, a petition for writ of certiora-ri involved a clearly defined two-stage proceeding. The court first determined whether *110 it had jurisdiction to review the order. It then received additional briefing and decided whether the order departed from the essential requirements of the law. William A. Haddad, Common Law Writ of Certiorari in Florida, 29 U. Fla. L. Rev. 207, 208 (1977). Although the separate briefing stages have been eliminated, it still is necessary for an appellate court to conduct a jurisdictional analysis prior to testing whether the non-final order passes the standard of review on its merits. Parkway Bank, 658 So.2d at 649.

. The Florida Constitutions of 1838, 1861, and 1865 did not expressly confer jurisdiction in certiorari on the supreme court or the circuit courts; but they did expressly vest the Florida Supreme Court with "general superintendence and control of all other Courts.” The Constitution of 1868, for the first time, expressly vested jurisdiction in certiorari in both the supreme court and the circuit courts. See Art. V, § 2, Fla. Const. (1838); Art. V, § 2, Fla. Const. (1861); Art. V, § 2, Fla. Const. (1865); Art. VI, § 5, Fla. Const. (1868).

. As is well known, the people of Florida in 1980 formally removed the certiorari power from the Florida Supreme Court. See S.J.R. 20-C (Spec. Sess. 1979), adopted Mar. 11, 1980. However, the court performs much the *111 same supervisory and law declaring functions it always has performed through a series of well-defined discretionary review provisions, which were modernized and codified in the Florida Constitution during the same period. See Art. V, § 3(b)(3)-(6), Fla. Const. (1980).

. The additional writs that have survived hundreds of years of development in England and managed to make the transatlantic voyage to this country are prohibition, mandamus, quo warranto and habeas corpus. See Alto Adams & George J. Miller, Origins and Current Status of the Extraordinary Writs, 4 U. Fla. L. Rev. 421 (1951).

. Orders granting discovery, on the other hand, traditionally have been reviewed by cer-tiorari. See e.g., State Farm Fla. Ins. Co. v. Puig, 62 So.3d 23 (Fla. 3d DCA 2011); City of Key West, Tree Comm'n v. Havlicek, 57 So.3d 900 (Fla. 3d DCA 2011); Am. Ed. Enters., LLC v. Bd. of Trs., 45 So.3d 941 (Fla. 3d DCA 2010); Procter & Gamble Co. v. Swilley, 462 So.2d 1188 (Fla. 1st DCA 1985); Greyhound Lines, Inc. v. Jackson, 445 So.2d 1107 (Fla. 4th DCA 1984); Boucher v. Pure Oil Co., 101 So.2d 408 (Fla. 1st DCA 1957).